UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

CAMBRIDGE PAVERS, INC.,

                Plaintiff,

        v.

ARMORPROOF PAVING & MASONRY LI, INC.,
and THOMAS J. O'LEARY,

                Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-7784 (MKB) (SIL)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Cambridge Pavers, Inc. ("Plaintiff") commenced the above-captioned action on November 7, 2024 against Defendants Armorproof Paving & Masonry LI, Inc. ("Defendant Armorproof") and Thomas J. O'Leary ("O'Leary") (collectively, "Defendants") for violations of: (1) federal trademark infringement pursuant to 15 U.S.C. § 1114; (2) false designation of origin pursuant to 15 U.S.C. § 1125(a); (3) dilution of Plaintiff's trademarks in violation of 15 U.S.C. § 1125(c); (4) unfair competition in violation of New York common law; (5) statutory unfair competition pursuant to New York General Business Law Section 360-1 ("GBL § 360-1"); and (6) deceptive acts or practices in violation of New York General Business Law Section 349 ("GBL § 349"). (Compl. ¶¶ 16–47, Docket Entry No. 1.)  On December 13, 2024, Plaintiff served the Summons and Complaint on Defendant Armorproof, but not O'Leary.  (Summons, Docket Entry No. 6.)  Plaintiff filed an Amended Complaint on January 15, 2025, adding an additional cause of action for (7) cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d).  (Am. Compl. ¶¶ 48–54, Docket Entry No. 7.)  On February 20, 2025, Plaintiff served the Amended Complaint on Defendant Armorproof, but not

O'Leary.[1]  (Aff. of Service, Docket Entry No. 8.)  On May 8, 2025, Plaintiff moved for default

judgment against Defendant Armorproof, seeking permanent injunctive relief.[2]  (Pl.'s Mot. for

Default J. ("Pl.'s Mot."), Docket Entry No. 13.)[3]  On May 9, 2025, the Court referred Plaintiff's

motion for default judgment to Magistrate Judge Steven I. Locke for a report and

recommendation.  (Order dated May 9, 2025.)

By report and recommendation dated November 10, 2025, Judge Locke recommends the

Court deny Plaintiff's motion for default judgment in its entirety (the "R&R").  (R&R 1–2, 17,

Docket Entry No. 14.)  On December 1, 2025, Plaintiff filed its Objection to the R&R

("Objection").[4]  (Pl.'s Obj., Docket Entry No. 17.)  For the reasons set forth below, the Court

grants Plaintiff's motion for default judgment for violations of (1) federal trademark

infringement pursuant to 15 U.S.C. § 1114 and (2) false designation of origin pursuant to 15

U.S.C. § 1125(a).  The Court denies Plaintiff's motion for default judgment for claims of: (1)

dilution of Plaintiff's trademarks in violation of 15 U.S.C. § 1125(c); (2) unfair competition

under New York common law; (3) statutory unfair competition pursuant to GBL § 360-1; (4)

---

[1]  Defendant Armorproof failed to respond to the Complaint and Amended Complaint, and on March 27, 2025, Plaintiff sought a notice of default against Defendant Armorproof from the Clerk of Court.  (Pl.'s Req. for Certificate of Default, Docket Entry No. 11.)  On April 3, 2025, the Clerk of Court noticed default.  (Clerk's Entry of Default, Docket Entry No. 12.)

[2]  In light of Plaintiff only moving for default judgment against Defendant Armorproof, and the record's absence of proof indicating Plaintiff served a Summons, Complaint or Amended Complaint on O'Leary, the Court only considers potential relief with respect to Defendant Armorproof in this Memorandum and Order.

[3]  (Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), appended to Pl.'s Mot., Docket Entry No. 13-1.)

[4]  On November 24, 2025, Plaintiff filed a motion requesting additional time to file an objection to the R&R, which the Court granted.  (Pl.'s Mot. for Extension of Time, Docket Entry No. 16; Order dated Nov. 25, 2025.)

deceptive acts or practices in violation of GBL § 349; and (5) cyberpiracy in violation of 15

U.S.C. § 1125(d).

## I.  Background

### a.  Factual background

#### i.  Plaintiff Cambridge Pavers, Inc.

Plaintiff is a New Jersey corporation with its business located in Lyndhurst, New Jersey,[5]

(Am. Compl. ¶ 1; Am. Decl. of Joseph E. Sutton ("Am. Decl.") ¶ 16, appended to Pl.'s Obj.,

Docket Entry No. 17-3), is "a leading manufacturer of paving stones in the United States," and

distributes products across the New York-New Jersey metropolitan area, Long Island and the

Eastern Seaboard, (Am. Decl. ¶¶ 7, 10).  In addition, Plaintiff is the owner of two "valid and

subsisting" registered trademarks in use since 1995: "Armortec" and "Cambridge Pavingstones

---

[5]  The Court assumes the truth of the factual allegations in the Amended Complaint for purposes of this Memorandum and Order.  *See Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure § 2688.1 (4th ed.))); *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (per curiam) (noting that courts must accept allegations in the complaint as true "in deciding whether a default judgment is appropriate").  "Where there are discrepancies between factual allegations in the [ ] [c]omplaint and the signed declarations . . . of [the p]laintiffs, [the Court may] rel[y] on the facts in the . . . declarations to resolve liability . . . ."  *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 256 n. 4 (E.D.N.Y. 2024); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) ("A court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim." (citation omitted)).  "Plaintiffs' affidavits and declarations are 'presumed to be correct in the absence of any rebuttal evidence proffered by [d]efendants.'"  *Cao*, 727 F. Supp. 3d at 256 n. 4 (quoting *Duro v. BZR Piping & Heating Inc.*, No. 10-CV-0879, 2011 WL 710449, at *3 (E.D.N.Y. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011)).

with Armortec & Wallstones" (collectively, the "Marks").[6]  (Am. Compl. ¶¶ 6, 9, 11.)

"ARMORTEC" is U.S. Trademark Registration No. 3,094,763 (the "Armortec Mark").  (*Id.* ¶ 8.)



(Registered Trademarks, annexed to Pl.'s Obj. as Ex. 1, Docket Entry No. 17-1.)

"CAMBRIDGE PAVINGSTONES WITH ARMORTEC & WALLSTONES" is U.S. Trademark

Registration No. 6,620,469 (the "Cambridge Mark").  (*Id.*; Am. Compl. ¶ 11.)



Plaintiff's Armortec Mark has been "heavily promoted and advertised for decades"

locally and nationally, with Plaintiff spending an approximate average of $6.2–6.5 million

annually in advertising during the last ten years.  (Am. Decl. ¶ 8.)  The television commercials

and related advertising use a "famous jingle" that recites "Cambridge Pavers, with Armortec."[7]

---

[6]  Plaintiff filed this action under the name "Cambridge Pavers, Inc." but refers to its "Armortec brand" in its moving papers and moves for injunctive relief with respect to its two Marks, "Armortec" and "Cambridge Pavingstones."  (*See* Am. Compl. ¶¶ 6, 9, 11; *see generally* Pl.'s Obj.; Am. Decl.)

[7]  In its default judgment motion and Objection to the R&R, Plaintiff primarily pleads facts with respect to the Armortec Mark but seeks injunctive relief to protect both of its Marks. (*See* Pl.'s Mem. 6–7.)  The entirety of the Armortec Mark is incorporated into the Cambridge Mark through use of the word "Armortec" with the same style.  (*See* Registered Trademark.).  As

(Pl.'s Obj. 11.)  According to Plaintiff, the Armortec Mark brand products have reached between one and two hundred million dollars in sales annually for nearly the past decade, with $214,617,764 in 2024 sales.  (Am. Decl. ¶ 9.)  Plaintiff's CEO "Charles Gamarekian, is well-known in the outdoor living space market" and starred in national television commercials during the prior twenty years.  (*Id.* ¶ 7.)  Plaintiff contends the Armortec Mark "signifies [Plaintiff's] commitment to a manufacturing process which will insure a long-lasting protective finish on paving stones."  (*Id.* ¶ 8.)  It also specifically refers to Plaintiff's products' as having "unique mix design containing a super-strong hard-facing process which is manufactured into every Cambridge paving stone."  (*Id.*)  Plaintiff has filed various federal suits to police its flagship mark against other pavers who "use . . . an ARMOR or ARMA prefix" and "a marketing approach which emphasized protection against wear and tear."  (*Id.* ¶ 12.)  The suits "settled with the defendants agreeing to cease all use of the contested marks."  (*Id.*)

### ii.   Defendant Armorproof

Defendant Armorproof is a New York corporation based in Ronkonkoma, New York, and previously based in Holbrook, New York.[8]  (Am. Compl. ¶ 2; Am. Decl. ¶ 16.)  Armorproof "advertises and sells paving stones, using and bearing the . . . mark Armorproof Paving & Masonry, the identical type of products marketed and sold by [P]laintiff, in the same field of business and industry as [P]laintiff."  (*Id.* ¶ 15.)  Armorproof uses the following mark on its products and website (the "Armorproof Mark" or "Defendant Armorproof's Mark"):

---

a result, the Court's analysis primarily focuses on the Armortec Mark but addresses Plaintiff's claims with respect to both Marks and notes in this Memorandum and Order where the pleading addresses a specific mark.

[8]  The parties are "both operating in the New York metropolitan area, and are competing directly with each other in the same geographic region, for the same customers."  (Am. Decl. ¶ 16.)

(*Id.*; Armorproof Mark, annexed to Pl.'s Obj. as Ex. 2, Docket Entry 17-2.) Defendant Armorproof is an unauthorized dealer who also "purchas[es] [Plaintiff's] paving stones . . . bearing the registered [ ] Armortec [Mark] . . . [and] then market[s] and sell[s] those same products as being authorized by [P]laintiff, using the [Armorproof Mark]."[9] (Am. Decl. ¶ 17.) Defendant Armorproof has refused Plaintiff's requests to cease use of its alleged infringing mark. (*Id.* ¶¶ 18–21.) Plaintiff served Defendant Armorproof a cease-and-desist letter by email and mail in June of 2024, and, according to Plaintiff, "still to this date [Defendant Armorproof] ha[s] refused to cease use of the infringing mark." (*Id.* ¶ 21.) Plaintiff's company representative

---

[9] The Court notes an inconsistency in Plaintiff's pleading. In its Amended Complaint, Amended Declaration and Objection to the R&R, Plaintiff alleges that Defendant Armorproof purchased Plaintiff's goods and resold them "using marks confusingly similar to Plaintiff's" without specifying what that mark was or "using the mark Armorproof Paving and Masonry." (Am. Compl. ¶ 13; Am. Decl. ¶ 17; *see* Pl.'s Obj. 16.) However, in its motion for default judgment and the initial Declaration of Joseph E. Sutton, Plaintiff pleads that Defendant Armorproof resold its goods "using Plaintiff's [M]arks." (Pl.'s Mem. 5–6; *see* Declaration of Joseph E. Sutton ("Decl.") ¶ 14, appended to Pl.'s Mot., Docket Entry No. 13-2.) Plaintiff asks the Court to focus on the Amended Declaration in support of its motion for default judgment and notes the Amended Declaration "amplif[ies] and clarif[ies] certain factual aspects related to [P]laintiff's claims." (Pl.'s Obj. 2–3.) When there are discrepancies between factual allegations in the Amended Complaint and signed declarations or affidavits of the plaintiffs, courts have relied on the facts in the affidavits and declarations to resolve liability. *See Cao*, 727 F. Supp. 3d at 256 n.4–5 (relying on factual allegations in plaintiff's declaration over contradictory allegations in amended complaint); *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *2 (E.D.N.Y. Mar. 21, 2023) (crediting factual allegations in plaintiffs' affirmations over allegations in second amended complaint); *Rilloraza v. Rhodes*, No. 21-CV-3305, 2023 WL 7686699, at *1 n.1 (E.D.N.Y. Sep. 8, 2023) ("Where the affidavit deviates from the allegations set forth in the Amended Complaint and Memorandum in Support of Motion for Default Judgment, this Court relies on the facts stated in plaintiff's detailed affidavit.") (collecting cases). Accordingly, the Court relies on Plaintiff's Amended Declaration, which states that Defendant Armorproof resold Plaintiff's goods using its Armorproof Mark. *See Cao*, 727 F. Supp. 3d at 256 n.4–5.

also confronted a representative of Defendant Armorproof in September of 2024 and demanded Defendant Armorproof cease use of its Armorproof Mark, which they refused.  (*Id.* ¶ 18.)

### b.   Procedural background

On November 7, 2024, Plaintiff filed the Complaint, alleging federal causes of action for trademark infringement, false designation of origin, and dilution and New York state causes of action for common law unfair competition, statutory unfair competition under GBL § 360-1, and deceptive acts or practices under GBL § 349.  (Compl. ¶¶ 16–47.)  On January 15, 2025, Plaintiff added another federal cause of action for cyberpiracy in its Amended Complaint.  (Am. Compl. ¶¶ 48–54.)  In the Amended Complaint, Plaintiff seeks (1) preliminary and permanent injunctive relief enjoining Defendants from infringing on its trademarks; (2) statutory damages, treble damages and disgorgement of profits; and (3) attorneys' costs and fees.  (Am. Compl. ¶¶ 23, 31, 38, 47, 54.)  Plaintiff served Defendant Armorproof with the Complaint and the Amended Complaint.  (Summons; Aff. of Service.)  Defendant Armorproof failed to answer or otherwise respond to the Complaint and Amended Complaint.

On May 8, 2025, after the Clerk of Court entered a Certificate of Default against Defendant Armorproof, (Clerk's Entry of Default), Plaintiff filed a motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, seeking permanent injunctive relief against Defendant Armorproof, enjoining it from further trademark infringement of both Marks.  (Pl.'s Mot. for Default J.; Pl.'s Mem.)  The Court referred Plaintiff's motion for default judgment to Judge Locke on May 9, 2025.  (Order dated May 9, 2025.)  Defendant Armorproof has neither answered nor responded to Plaintiff's motion for default judgment.

### c.   R&R

In the R&R, Judge Locke recommends denying in its entirety Plaintiff's motion for default judgment requesting permanent injunctive relief.  (R&R 1–2, 17.)  First, Judge Locke

finds "any claim for monetary relief to be abandoned" because Plaintiff only seeks injunctive relief in its motion for default judgment and its proposed judgment. (*Id.* at 1 n.1.)

Second, Judge Locke recommends denying injunctive relief with respect to the causes of action regarding (1) federal trademark infringement pursuant to 15 U.S.C. § 1114; (2) false designation of origin pursuant to 15 U.S.C. § 1125(a); (3) dilution pursuant to 15 U.S.C. § 1125(c); (4) unfair competition under New York common law; and (5) statutory unfair competition under GBL § 360-1. (*Id.* at 7–15.) In support, Judge Locke recommends denying injunctive relief because (1) Plaintiff fails to plead sufficient similarities between its Armortec Mark or Cambridge Mark and Defendant Armorproof's Mark to establish liability for trademark infringement, (*id.* at 8–12); (2) Plaintiff's use of a helmet design in the place of the letter "O" in "ARMORTEC" in both the Armortec and Cambridge Marks is distinct from the Armorproof Mark which "does not, at any point, rely upon a similar logo to represent the letter 'O,'" (*id.* at 4); (3) while the two companies sell similar products, the parties "sell them in substantially different markets with no apparent overlap, and the only similarity between the marks is the presence of the word 'Armor,'" (*id.* at 11); and (4) Plaintiff fails to allege how use of the name "Armorproof" would cause a likelihood of confusion with its products when Defendant Armorproof sells in a "different state under a different name and using a distinct website," and Defendant Armorproof does not "actually use[] either the Armortec Mark or the Cambridge Mark on its website or other promotional materials," (*id.* at 4, 11).

Third, Judge Locke recommends denying the motion for the two other causes of action — (1) deceptive acts or practices in violation of GBL § 349; and (2) cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) — because Plaintiff fails to properly allege these claims. (*Id.* at 12–17.) Judge Locke finds these two claims abandoned

because Plaintiff does not move on these claims in the motion for default judgment. (*Id.*) For the violation of GBL § 349 alleging Defendant Armorproof "employed deceptive acts or practices," Judge Locke finds Plaintiff's pleading insufficient because Plaintiff fails to allege Defendant Armorproof engaged in any "consumer oriented" conduct that harmed consumers or the public at large. (*Id.* at 13–14.) In addition, Judge Locke finds Plaintiff fails to allege a claim of cyberpiracy under the Anti-Cybersquatting Consumer Protection Act because the two companies do not have similar domain names, and Plaintiff does not allege that it ever owned or attempted to register a domain name similar to Defendant Armorproof's.[10] (*Id.* at 16–17.) Judge Locke finds Plaintiff's allegation that Defendant Armorproof uses a domain name with the word "armor" in it insufficient to establish liability with respect to a claim of cyberpiracy under the Anti-Cybersquatting Consumer Protection Act. (*Id.* at 16.)

## II. Discussion

### a. Standards of review

#### i. R&R

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *United States v. Romano*, Nos. 15-992, 19-2507, 19-3573, 19-3815, 2022 WL 402394, at *3 (2d Cir. Feb. 10, 2022) (summary order) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)); *see also Houghtaling v. Eaton*, No. 22-638, 2023

---

[10] Plaintiff specifically alleges that Defendant Armorproof "registered the domain name www.armorproofli.com having a bad faith intent to profit from using a domain name confusingly similar to Plaintiff's [Armortec] trademark." (Am. Compl. ¶ 49.)

WL 113840, at *2 n.3 (2d Cir. Jan. 5, 2023) (summary order) (noting that the district court conducted a *de novo* review of the magistrate judge's report and recommendation and addressed the plaintiff's objections).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (summary order) (noting that the district court applied the correct legal standard in conducting *de novo* review of portions of the magistrate judge's report to which specific objections were made and reviewing portions not objected to for clear error).  The clear error standard also applies when a "party makes only conclusory or general objections, or simply reiterates his original arguments."  *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)); *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations.").  Where, however, a party's "objections take 'issue with a specific legal conclusion in the report and recommendation,'" a district court reviews the objected-to portions of the report and recommendation *de novo*, "even if they repeat an argument raised before the magistrate judge."  *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025) (quoting *Miller*, 43 F.4th at 121); *Miller*, 43 F.4th at 120–21 (concluding that the plaintiff's objection, although revisiting an issue already argued, should have been reviewed *de novo* where the plaintiff objected to a "specific legal conclusion in the report and recommendation," and noting that clear error is normally applied "when the

objections are nonspecific or 'merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition'" (alteration in original) (quoting *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006))).

### ii.    Rule 55

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Am. Transit Ins. Co. v. Pierre*, No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar. 19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (same); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))); *Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds & the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund v. Toros Brothers Construction Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3 (E.D.N.Y. Nov. 24, 2025) (same). "A default . . . only establishes a defendant's liability if those

allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see Wells Fargo Bank, N.A. v. Queen Tec Support Inc.*, No. 23-CV-4462, 2025 WL 939225, at *3 (E.D.N.Y. Mar. 28, 2025) (explaining that the allegations supporting a default judgment must be "sufficient to state a cause of action against the defendant" (citation omitted)); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))); *see also Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *2 (E.D.N.Y. Sep. 25, 2025) (applying the Rule 55 standard and holding that default establishes liability only where the complaint's well-pleaded allegations state a valid cause of action), *report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Oct. 10, 2025).  However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . .  a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party." *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 20 (2d

Cir. 2020))). "The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-06281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (same); *see also Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *2 (E.D.N.Y. Sep. 11, 2024) (stating there must be an evidentiary basis for damages and that the court may rely on affidavits and documentary evidence).

### b. Unopposed portions of the R&R

Plaintiff does not object to Judge Locke's recommendation that the Court deem as abandoned (1) Plaintiff's requests for relief that are not included in Plaintiff's default judgment motion,[11] (Pl.'s Obj. 3); and (2) Plaintiff's claims of deceptive acts or practices in violation of GBL § 349 and cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), (*see* Pl.'s Obj.). Plaintiff also does not object to Judge Locke's recommendation that the Court deny its motion for default judgment with respect to its claims

---

[11] In its Amended Complaint, Plaintiff sought preliminary and permanent injunctions enjoining Defendant Armorproof from infringing on its trademarks and also sought damages including an accounting of and payment of Defendant Armorproof's profits and Plaintiff's damages, including statutory damages, treble damages, attorneys' fees, costs, and disbursements. (*See* Am. Compl.) However, in its motion for default judgment, Plaintiff seeks only injunctive relief. (Pl.'s Mem. 1.) Accordingly, Judge Locke finds in the R&R that "any claim for monetary relief [is] abandoned." (R&R 1 n.1.) In its Objection to the R&R, Plaintiff clarifies it is only seeking a permanent injunction in its motion for default judgment. (Pl.'s Obj. 3.)

for (1) dilution in violation of 15 U.S.C. § 1125(c); (2) unfair competition under New York common law; and (3) statutory unfair competition pursuant to GBL § 360-1.[12]

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts Judge Locke's recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) to (1) deny as abandoned Plaintiff's requests for relief that are not included in its motion and Plaintiff's claims under GBL § 349 and the Anti-Cybersquatting Consumer Protection Act, and (2) deny Plaintiff's claims for dilution in violation of 15 U.S.C. § 1125(c); unfair competition under New York common law; and statutory unfair competition pursuant to GBL § 360-1.

c.   **Plaintiff's objections to the R&R**

Plaintiff requests that the Court reject "the recommendation of the Magistrate Judge[] and issue a default judgement and a permanent injunction" enjoining Defendant Armorproof from engaging in trademark infringement and unfair competition[13] involving Plaintiff's two registered

---

[12]  In its Objection to the R&R, Plaintiff only addresses the R&R's conclusions regarding its claims of trademark infringement and unfair competition.  (*See* Pl.'s Obj. 2 ("Plaintiff's motion for default judgement . . . sought to establish a likelihood of success on the merits, at least with respect to its claims for federal trademark infringement and unfair competition.").)  Plaintiff does not address its claims for (1) dilution in violation of 15 U.S.C. § 1125(c); (2) unfair competition under New York common law; and (3) statutory unfair competition pursuant to GBL § 360-1, which is not a statute that exists.  *See* GBL § 360 (listing subsections alphabetically (A)–(R) and not numerically) (no subsection regarding unfair competition).  Instead, Plaintiff generally discusses federal trademark infringement and unfair competition.  (*See* Pl.'s Obj. (discussing only likelihood of confusion and *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) factors).)  Accordingly, in reviewing the R&R, the Court only considers the two claims that Plaintiff objects to in its Objection to the R&R: (1) federal trademark infringement under 15 U.S.C. §1114 and (2) false designation of origin under 15 U.S.C. § 1125(a).  *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (summary order) (a district court may adopt the portions of the magistrate judge's recommended ruling to which no timely objections have been made, after reviewing and finding no clear error, and review *de novo* the portions of the recommended report to which specific objections were made).

[13]  In its Objection to the R&R, Plaintiff references its claim for "federal unfair competition" and cites to 15 U.S.C. §1125, Section 43 of the Lanham Act.  (Pl.'s Obj. 2, 5, 15.)

Marks.  (Pl.'s Obj. 2, 16.)  Plaintiff raises three specific objections to the R&R, all of which challenge Judge Locke's conclusion that Plaintiff fails to allege liability for trademark infringement and false designation of origin.  (*See id.* at 2.)  Plaintiff argues that Judge Locke (1) fails to duly consider the strength of the Armortec and Cambridge Marks as inherently distinctive, (*id.* at 3–6); (2) incorrectly concludes that the parties' marks are not the same by failing to consider the marks' shared appearance (sight), sound and meaning, (*id.* at 8–12); and (3) incorrectly concludes that Plaintiff and Defendant Armorproof do not serve the same geographical region or the same clientele, (*id.* at 6–8, 13–14).  To address the alleged deficiencies in pleading noted by Judge Locke in the R&R, Plaintiff filed an Amended Declaration alleging additional facts to support its causes of action.  (*Id.* at 2; *see* Am. Decl.).  The Court considers Plaintiff's objections *de novo*.

---

However, there is no federal cause of action for unfair competition.  *Alliant Ins. Servs., Inc. v. Resilience Ins. Advisory Corp.*, No. 23-CV-9277, 2025 WL 2780856, at *4 (S.D.N.Y. Sep. 30, 2025) ("[C]ourts have made clear that under [Section] 43 of the [Lanham] Act, there is no specific federal cause of action for unfair competition."  (alterations in original) (quoting *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 481 (S.D.N.Y. 2022))).  "Instead[,] unfair competition under the Lanham Act is considered a category of claims consisting primarily of causes of action for false designation of origin and false advertising."  *Id.* (alteration in original) (quoting *Camelot SI, LLC*, 632 F. Supp. 3d at 481); *Int'l Code Council, Inc. v. Verma*, No. 24-CV-2026, 2025 WL 2791155, at *5 n.5 (E.D.N.Y. Aug. 21, 2025) (quoting *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272–73 (E.D.N.Y. 2014)) (same), *report and recommendation adopted*, 2025 WL 2630056 (E.D.N.Y. Sep. 12, 2025); *see* 15 U.S.C. § 1125(a)(1) (creating a civil cause of action for false designation of origin and false advertising).  Plaintiff's claim for "unfair competition" fits into the category of "false designation of origin" which is the cause of action pled by Plaintiff in its Amended Complaint.  (*See* Am. Compl. ¶¶ 24–31.)  This cause of action under 15 U.S.C. § 1125(a)(1)(A) prohibits any false designation of origin or false or misleading representation of fact that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person."  *Id*.  Accordingly, the Court addresses Plaintiff's claim for false designation of origin and considers Plaintiff's arguments in its Objection to the R&R referring to unfair competition as applying to its claim for false designation of origin.

>  **d.  Plaintiff sufficiently pleads claims of trademark infringement and false designation of origin under the Lanham Act.**

Plaintiff argues in its Objection to the R&R it has sufficiently pleaded trademark infringement and false designation of origin to support its request for a permanent injunction. (Pl.'s Obj. 2.)

To prevail on claims for trademark infringement (section 1114) and false designation of origin (section 1125(a)) under the Lanham Act, a plaintiff "must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (alteration in original) (quoting *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)); *see RiseandShine Corp. v. PepsiCo, Inc.* (*RiseandShine* II), No. 23-CV-1176, 2024 WL 5165388, at *2 (2d Cir. Dec. 19, 2024) (summary order) (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009)) (stating the standard for trademark infringement under the Lanham Act), *petition for cert. filed*, No. 24-1016 (U.S. Mar. 24, 2025); *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 43 (2d Cir. 2020) (quoting *Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)) (same); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (noting that trademark infringement claims under Lanham Act sections 1114(1) and 1125(a) are analyzed under the same test); *JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2020 WL 6825585, at *4 (S.D.N.Y. Nov. 20, 2020) (noting that trademark infringement claims and false designation of origin claims under the Lanham Act have the same prima facie requirements (quoting *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002))); *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) (same); *see also 1-800*

*Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (applying the same legal standard to analyze trademark infringement claims under sections 1114 and 1125).

For the first prong, "[a] certificate of registration . . . [is] prima facie evidence of the validity of [a] registered mark," 15 U.S.C. § 1057(b), and creates a presumption that the mark is entitled to protection. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection.").

To assess the second prong, courts evaluate the likelihood of confusion using the test articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), which balances a nonexclusive list of eight factors. *See RiseandShine* II, 2024 WL 5165388, at *2 (citing *Tiffany & Co.*, 971 F.3d at 84). The "*Polaroid* factors" include:

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and then competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

*Id.* (first citing *Tiffany*, 971 F.3d at 84–85; and then citing *Polaroid*, 287 F.2d at 495). The evaluation of the *Polaroid* factors is not a mechanical process "'where the party with the greatest number of factors weighing in its favor wins.' Instead, the inquiry focuses 'on the ultimate question of whether consumers are likely to be confused.'" *RiseandShine* II, 2024 WL 5165388, at *2 (internal citations omitted) (quoting *Tiffany & Co.*, 971 F.3d at 85); *see Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) ("No single factor is dispositive; rather, each is evaluated 'in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product.'" (quoting *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125,

130 (2d Cir. 2004))). "The pertinence of individual factors varies with the facts of the particular case." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). Nevertheless, "it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995) (citing *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 214 (2d Cir. 1985)).

As to the first prong — validity of the mark, Plaintiff sufficiently pleads its Armortec and Cambridge Marks are valid through its certificates of trademark registration, and creates a presumption that the Marks are entitled to protection. *See* 15 U.S.C. § 1057(b); *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871.

For the second prong — likelihood of confusion, the Court examines the *Polaroid* factors below to determine if Defendant Armorproof's Mark is likely to cause confusion as to the source of paving stones.

### i.   Strength of Plaintiff's Marks

Plaintiff argues that Judge Locke in the R&R "does not give due consideration to the strength of [P]laintiff's [M]ark[s]." (Pl.'s Obj. 3 (emphasis omitted).)  First, Plaintiff argues that its Armortec and Cambridge Marks are "presumed to be strong since they are both federally-registered" which warrants "'strong' protection" over a "greater spectrum of variations on visual format." (*Id.* at 3–4.)  Second, Plaintiff argues the Armortec Mark is "now elevated to incontestable status with the [United States Patent and Trademark Office ('USPTO')]" and is therefore "inherently distinctive." (*Id.* at 4.)  Third, Plaintiff contends that the Armortec Mark has also "acquired distinctiveness" and is "strong in its recognition in the marketplace" because it has been sold in interstate commerce for thirty years, achieved over $1.74 billion in sales just in the last ten years alone, and has been advertised heavily. (*Id.* at 4–5.)  Fourth, Plaintiff states

its settlements of other trademark actions against competitors support a finding of strength.  (*Id.* at 5–6.)

"The strength of a mark depends ultimately on its distinctiveness, or its origin-indicating quality, in the eyes of the purchasing public."  *Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 23-12-CV, 2024 WL 1152520, at *2 (2d Cir. Mar. 18, 2024) (summary order) (quoting *RiseandShine Corp. v. PepsiCo, Inc.* (*RiseandShine* I), 41 F.4th 112, 120 (2d Cir. 2022)); *see also Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999) ("To be valid and protectible, a mark must be capable of distinguishing the products it marks from those of others." (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992))).  "An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning."  *Two Pesos, Inc.*, 505 U.S. at 769; *Jackpocket, Inc.*, 2024 WL 1152520, at * 2 ("The strength of a trademark is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength." (quoting *RiseandShine* I, 41 F.4th at 120)); *RiseandShine* II, 2024 WL 5165388, at *2 ("The strength-of-mark factor is divided into two inquiries: inherent (or 'conceptual') strength and acquired strength." (quoting *RiseandShine* I, 41 F.4th at 120)); *Car-Freshner v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020) (same).  "To describe different degrees of inherent distinctiveness, the trademark law utilizes four categories.  In order of ascending strength, they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful."  *Jackpocket*, 2024 WL 1152520, at *3 (quoting *RiseandShine* I, 41 F.4th at 120); *Car-Freshner*, 980 F.3d at 329 (same); *see also Two Pesos, Inc.*, 505 U.S. at 768 (citing *Abercrombie*

*& Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)) (same).  The Second Circuit

has explained that:

> A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species.  A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.

*Lane Cap. Mgmt.*, 192 F.3d at 344.  "Generic marks are not protectible."  *Id*.  Descriptive marks

"are not inherently distinctive" and are only protected upon a showing that the mark has acquired

"secondary meaning," *id*., which is "determined by analyzing six factors: advertising

expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the

product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the

mark's use," *Car-Freshner Corp.*, 980 F.3d at 329 (citing *Centaur Commc'ns, Ltd. v. A/S/M

Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987)).  *See RiseandShine* II, 2024 WL 5165388,

at *3 (In evaluating whether a mark has acquired distinctiveness, "[t]he fundamental question,

however, is whether the *primary* significance of the term in the minds of the consuming public is

not the product but the producer." (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973

F.2d 1033, 1040 (2d Cir. 1992))); *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 160

(2d Cir. 2016) ("The Lanham Act affords protection to a descriptive mark only if the trademark

holder can demonstrate that it has acquired secondary meaning in the marketplace — in other

words, that the mark's primary significance to relevant consumers is to identify [the trademark

holder as] the source of the product." (alteration in original) (internal citation and quotation

marks omitted)).  Suggestive, arbitrary, and fanciful marks are inherently distinctive and

therefore automatically protected because "[t]heir intrinsic nature serves to identify a particular source of a product." *Lane Cap. Mgmt.*, 192 F.3d at 344; *see LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24, 25 (2d Cir. 2017) ("A mark has inherent distinctiveness if its 'intrinsic nature serves to identify a particular source.'" (quoting *Two Pesos, Inc.*, 505 U.S. at 768)).

However, any one categorical placement of inherent distinction is not definitive as to the strength of the mark. *See RiseandShine* I, 41 F.4th at 121 ("[A] finding of suggestiveness does not guarantee a determination that the mark is a strong one." (alteration in original) (citation omitted)); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("Suggestiveness . . . does not necessarily determine the issue regarding the strength of the mark."); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988) ("Although the category in which the mark qualifies . . . is useful in determining its strength, it is not dispositive . . . ."); *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 702 (E.D.N.Y. 2018) (order adopting report and recommendation) ("The fact that a mark is deemed 'more than merely descriptive,' does not mean that a mark is necessarily strong." (quoting *Lane Cap. Mgmt., Inc.*, 192 F.3d at 345)).

### 1.   Inherent distinctiveness

The registration of Plaintiff's Armortec and Cambridge Marks are prima facie evidence of the validity of the Marks and create a presumption that the Marks are neither generic nor descriptive.[14] *See Abercrombie & Fitch Co.*, 537 F.2d at 10–11; *Lois Sportswear, U.S.A., Inc.*,

---

[14] Plaintiff incorrectly relies on the presumption that registered trademarks are inherently distinct and therefore strong. *See Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("Registration by the [US]PTO without proof of secondary meaning creates the presumption that the mark is *more than merely descriptive*, and, thus, that the mark is

799 F.2d at 871.  However, even without the benefit of this presumption, the Court finds that

Plaintiff's registered Marks are suggestive and also strong, and thus inherently distinctive and

entitled to protection.  The Marks are strong because the word "armor"[15] in the Marks evokes

---

inherently distinctive." (emphasis added)); *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 328 n.12 (2d Cir. 2020) (finding federally registered, incontestable marks are entitled to "significant protection" *and* conducting the degree of inherent distinction analysis) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)); *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) ("The 'strength of the mark' analysis focuses on the distinctiveness of the mark, and while registered marks enjoy a presumption of distinctiveness . . . a registered mark may still be deemed weak."); *see, e.g.*, *RiseandShine Corp. v. PepsiCo, Inc.*, (*RiseandShine* I), 41 F.4th 112, 121–23 (2d Cir. 2022) (affirming district court decision that a registered suggestive mark was weak); *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 581 (2d Cir. 1991) (same); *Plus Prod. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983) (same); *cf. Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (reversing district court's determination that a registered mark was "relatively strong").

 In addition, while Plaintiff's Armortec and Cambridge Marks are federally registered, Plaintiff has not demonstrated that either mark is incontestable.  Plaintiff cites to a conclusory statement in the Amended Complaint for support that the Armortec Mark is incontestable.  (Pl.'s Obj. 4.)  Under 15 U.S.C. § 1065, an incontestable mark is one that has been in continuous use for five consecutive years following its registration, providing it meets four factors: (1) there has been no adverse final decision related to the owner's right to the mark; (2) there is no proceeding involving the mark pending in the USPTO or in a court; (3) an affidavit attesting to these factors is filed with the Director of the USPTO; and (4) the mark is not generic.  *Id*.  Plaintiff does not provide an affidavit of incontestability filed with the USPTO or otherwise provide supporting documentation demonstrating affidavits of incontestability have been accepted by the USPTO. *Ampion Corp. v. AXXA Tech, Inc.*, No. 18-CV-660, 2019 WL 2119621, at *3 n.2 (W.D.N.Y. May 15, 2019) (finding plaintiff failed to allege incontestable status because plaintiff did not provide a USPTO affidavit); *cf. Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 703 (E.D.N.Y. 2018) (reversing magistrate judge conclusion that plaintiff did not prove incontestable status because plaintiff filed evidence "indicating that affidavits of incontestability had been accepted by the USPTO" (citing 15 U.S.C. § 1065)).  The copies of certificates of registration do not indicate incontestable status.  (Registered Trademarks.) Nevertheless, incontestability is just one factor in determining the strength of a mark, and it is not conclusive as to strength.  *See The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 961 (2d Cir. 1996); *Kohler Co.*, 422 F. Supp. 3d at 703–05 (citing *id.*) (finding plaintiff established incontestability but the marks still only had "moderate strength" because of "deficiencies in [p]laintiff's evidence of distinctiveness in the marketplace.")

 [15]  The Court focuses on "Armor" in the Armortec and Cambridge Marks because it is the main component of the Marks.  *Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 23-12, 2024 WL

strength and the unique defensive covering that Plaintiff wishes to connect with its products, namely paving stones with a hard-facing top surface.  *See Jackpocket, Inc.*, 2024 WL 1152520, at *3 (affirming district court finding that the mark "Jackpocket" is suggestive because it "incorporates a generic term commonly used in the lottery and gaming industry — 'jackpot'— in a rather conspicuous manner" and evokes the product it references — lottery courier services); *RiseandShine* I, 41 F.4th at 121 (affirming district court finding that the mark "rise" was suggestive because "rise" "evokes images of morning, which suggest[s] a quality or qualities of the product [coffee] through the use of imagination, thought, and perception" (first alteration in original) (internal citations and quotation marks omitted)); *Katz v. Modiri*, 283 F. Supp. 2d 883, 893 (S.D.N.Y. 2003) (finding the "Juva" mark suggestive because it bore a linguistic "relationship to the rejuvenating qualities associated with a spa" and "[c]onnecting the name to the spa services requires imagination"); *see also Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 385–86 (2d Cir. 2005) (finding "suggestive, but just barely" a mark that included the words "orange flavored" and the letter O in the shape of an orange slice to describe the product orange-flavored vodka).

The Court's finding of suggestiveness, however, does not "guarantee a determination that the mark is a strong one." *RiseandShine* I, 41 F.4th at 121.  In *RiseandShine* I, the Second Circuit explained that the mark "rise" for a coffee beverage was suggestive but weak because the word "rise" had "strong logical associations" with coffee and "so clearly evoked the claimed virtues of the product it references." *Id.* at 121–23 ("Trademark law does not offer robust protection to those who demand the exclusive right to use words that describe or suggest a

---

1152520, at *5 (2d Cir. Mar. 18, 2024) (summary order) ("[A] mark may be broken down into its generic components to measure the composite mark's inherent strength." (first citing *Car-Freshner*, 980 F.3d at 329–30; and then citing *Streetwise Maps, Inc*, 159 F.3d at 744)).

product or its virtues.").  In contrast, Plaintiff in this case uses "armor" in its Marks to evoke a "unique" aspect of its product — the paving stones' "mix design containing a super-strong hard-facing process."  (Am. Decl. ¶ 8.)  Unlike "rise" and coffee or "jackpot" and lottery, the logical association between "armor" and paving stones is not automatic: it requires imagination to associate paving stones with "armor." *Jackpocket, Inc.*, 2024 WL 1152520, at *3–4 (affirming district court decision that the registered suggestive mark was weak because it "conjure[d] up in an immediate sense the essential part of the product"); *RiseandShine* I, 41 F.4th at 122 (same); *see Cross Com. Media*, 841 F.3d at 164 (finding trademarks with the word "collective" suggestive for a software company because the word "collective" "demands a substantial mental leap" to "conjur[e] the image of [the company's] software in particular, rather than other goods or services that the word 'collective' might be used to describe"); *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988) (finding the mark "GUNG-HO" for a toy action figure suggestive because it requires imagination to connect the "fantasy personality" attributed to the toy and does not "describe[] the particular toy itself or its differentiating qualities"); *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:67 (5th ed.) ("If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.").

Accordingly, Plaintiff's Armortec Mark and Cambridge Mark are suggestive, relatively strong and inherently distinctive, and thus entitled to protection.

### 2.  Acquired distinctiveness

The Court finds that Plaintiff's Marks have acquired some distinctiveness through longevity of use and its alleged legal actions to protect its Marks, but Plaintiff's argument that its Marks acquired distinctiveness based on advertising expenditures and sales success are

conclusory and lack specificity to show brand recognition.  *See Jackpocket, Inc.*, 2024 WL 1152520, at *4 ("Courts look to six factors to determine whether a mark has acquired commercial strength: '[1] advertising expenditures, [2] consumer studies linking the mark to a source, [3] unsolicited media coverage of the product, [4] sales success, [5] attempts to plagiarize the mark, and [6] the length and exclusivity of the mark's use.'" (quoting *Car-Freshner*, 980 F.3d at 329)).

First, Plaintiff has been in the industry and used both its Marks to identify its goods since 1995, approximately thirty years.  (Am. Compl. ¶ 6.)  In addition, Plaintiff alleges that it has engaged in previous legal settlements policing use of its Marks, (Am. Decl. ¶ 9), and this slightly strengthens the distinctiveness of its Marks by maintaining their exclusive use.  *See Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999) ("[T]he successful policing of a mark adds to its strength to the extent that it prevents weakening of the mark's distinctiveness in the relevant market." (internal citation omitted)).

Second, although Plaintiff provides annual sales and marketing expenditures for the "Armortec brand of products," (Am. Decl. ¶ 9), Plaintiff fails to provide a comparison to the relevant market or demonstrate that the marketing and sales resulted in increased consumer recognition.  *See Jackpocket, Inc.*, 2024 WL 1152520, at *4 ("[T]he relevant inquiry is not whether the incumbent spent significant sums on marketing or earned significant sales revenue; it is instead whether those [marketing] efforts were effective in causing the relevant group of consumers to associate [the mark with the product offering], or whether the circumstances of that sales success were independently probative of increased brand recognition." (alterations in original) (internal citation and quotation marks omitted)); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (noting that "[e]ven an inherently

distinctive mark can, in its commercial context, lack strength as a mark," and holding that, "[i]n light of its . . . low level of commercial success and small advertising budget *relative to market competitors* at the relevant time, . . . [plaintiff] possessed a weak mark" (emphasis added)); *Kohler Co.*, 422 F. Supp. 3d at 705 ("[C]ourts in [the Second] Circuit have long recognized that the amount spent on advertising does not necessarily indicate the extent to which customers are aware of specific marks.") (collecting cases).  Without additional support, Plaintiff's annual sales and marketing expenditures are inconclusive as to acquired distinctiveness.  *See Jackpocket Inc.*, 2024 WL 1152520, at \*4 (upholding district court finding that plaintiff failed to demonstrate acquired commercial strength because "although [the plaintiff] had spent substantial sums on advertising and achieved significant sales success, these measures, without more, are insufficient"); *Kohler Co.*, 422 F. Supp. 3d at 705 (holding additional support was required in a default judgment motion to show marks' acquired market strength when the marks were suggestive and no market comparison was provided).

Despite Plaintiff's limited support regarding the acquired strength of its Marks, the Court concludes that the Marks are strong because of the Marks' inherent distinctiveness, and this factor therefore favors Plaintiff.  *See Katz*, 283 F. Supp. 2d at 893 ("[T]he [c]ourt finds the mark to be suggestive, and while it is not accorded the maximum degree of protection . . . the mark is nonetheless inherently distinctive and strong.").

### ii.   Degree of similarity

Plaintiff argues the that Judge Locke in the R&R incorrectly concludes that (1) Plaintiff's Armortec Mark and Defendant Armorproof's Mark are not similar, (2) "focuses unduly on the helmet logo in the letter 'O'" in Plaintiff's Marks, and (3) incorrectly states that Plaintiff only refers to itself as "Cambridge Pavers" and not "Armortec."  (Pl.'s Obj. 8–12).

First, Plaintiff argues its Marks and the Armorproof Mark "share[] the same appearance (sight) of the first prefix ARMOR, and each mark conveys a similar sound and meaning of strong material with the word ARMOR." (*Id.* at 9 (emphasis omitted).)  Plaintiff also argues that this similar meaning "may be so pervasive as to outweigh any visual or phonetic differences." (*Id.* at 9 (citing *Am. Home Prods. Corp. v. Johnson Chem. Co., Inc.*, 589 F.2d 103, 107 n.4 (2d Cir. 1978)).)  Second, Plaintiff argues the dominant part of its Marks is the word portion, not the helmet logo or design portion, and customers who encounter Defendant Armorproof's Mark "will have a recollection and focus" associating that product with "the company that uses the [Armortec Mark]." (*Id.* at 9–10.)  Third, Plaintiff argues it refers to its brand as "Armortec" in advertisements and has done so for decades, and "the audio of those commercials recites 'Cambridge Pavers, with Armortec.'" (*Id.* at 11–12.)  Plaintiff states that trademark law does not require the owner of the mark to refer to itself by its brand to enforce the trademark, only use the brand mark in connection with the goods it distributes. (*Id.*)

In considering the degree of similarity between the marks, a court should address two key questions: (1) "whether the similarity between the two marks is likely to cause confusion" and (2) "what effect the similarity has upon prospective purchasers." *Sports Auth.*, 89 F.3d at 962. "In deciding whether the marks are similar as used, [a court does] not look just at the typewritten and aural similarity of the marks, but [at] how they are presented in the marketplace." *Id.*; *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006) (finding side-by-side comparison useful to examine similarities and differences in respective designs "so long as a court maintains a 'focus on the ultimate issue of the likelihood of consumer confusion.'" (quoting *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 538 (2d Cir. 2005))).  Therefore, to apply this factor, "courts must analyze the mark's overall

impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Jackpocket Inc.*, 2024 WL 1152520, at *4 (quoting *Louis Vuitton Malletier*, 454 F.3d at 117); *Louis Vuitton Malletier*, 454 F.3d at 117 (reversing a district court conclusion where the court "overemphasized" and "inappropriately focus[ed] on the similarity of the marks in a side-by-side comparison instead of when viewed sequentially in the context of the marketplace"); *see also Equibal, Inc. v. 365 Sun LLC*, No. 21-CV-6254, 2024 WL 1526178, at *5 (S.D.N.Y. Apr. 9, 2024) (listing additional variables courts consider for the degree of similarity factor including "mode of presentation, typeface, inclusion of additional words, dress colors, and associated tie-ins") (quoting *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 305 (S.D.N.Y. 2021)).

Although the marks share similarity in the use of the term "armor," they are distinguishable from one another in the context of the marketplace because Plaintiff advertises its Armortec brand of products with its company name "Cambridge Pavers," and the parties' products are not sold via the same vendors. First, the marks are visually distinct with different fonts and different colors: Plaintiff's Armortec and Cambridge Marks are presented in black and white and Defendant Armorproof's Mark is orange and blue. Both the Armortec Mark and Armorproof Mark use all caps, but the "A" and "T" in the Armortec Mark are bigger than the mark's other letters while the letters in Defendant Armorproof's Mark are all the same size. Further, the "O" in the Armortec Mark, also present in the word "Armortec" in the Cambridge Mark, is in the shape of a helmet, which is not found in the "O's" in Defendant Armorproof's Mark. The Cambridge Mark includes many additional features beyond the word "Armortec" including the words "Cambridge," "pavingstones" and "wallstones," the letter "C" in

"Cambridge" in script, a design of a castle that runs from the left of the wording into "C," and a solid horizontal line below the wording in the mark.  In contrast, the Armorproof Mark includes the words "Armorproof," "paving and masonry" and its location "Long Island, New York," with no graphics.

Second, Plaintiff insufficiently alleges, in the context of the marketplace, that prospective purchasers will be confused by the marks based on the overlapping presence of "armor" alone. (Pl.'s Obj. 6–8.)  Plaintiff alleges customers will confuse the marks because they share the same first portion, "armor," but Plaintiff advertises its Armortec brand with the additional context of its "Cambridge Pavers" business name.[16]  (*Id*. at 8–11.)  Plaintiff does not allege that it ever independently advertises the Armortec Mark without "Cambridge Pavers."  Rather, Plaintiff alleges that its marketing contains a more fulsome "famous jingle," (*id*. at 11), that recites "Cambridge Pavers, *with* Armortec," (*id.* (emphasis added)), and its ads feature its "well-known" CEO.  (Am. Decl. ¶¶ 7–8.)  Having a "well-known house brand" "widely recognized by the consuming public" "significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products."  *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46–47 (2d Cir. 2000) (holding the recognition of the mark "Dentyne

---

[16] Plaintiff cites to several cases where courts found marks confusing based on the same or similar prefix or first portion of the compared marks, but those cases are distinguishable because the marks in those cases were also the predominant names that customers associated with the relevant products, and there were many additional factors beyond the similarity of the marks that resulted in the courts determining that there was a likelihood of confusion.  (*See* Pl.'s Obj. 10–11 (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) (finding the marks "Beanie Babies" and "Beanie Racers" confusingly similar); *Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977) (finding the marks "Arm & Hammer" and "Arm in Arm" confusingly similar); *Diner Inc. v. Dream Kitchen Inc.*, No. 95-CV-4130, 1995 WL 438627 (S.D.N.Y. July 24, 1995) (finding the marks "Honest Diner" and "Honest Baker" confusingly similar)).)  In addition, the Court is not bound by district court or out-of-circuit decisions.

Ice" as a member of the "widely recognized" Dentyne family of gums reduced the likelihood of confusion of similar marks such as "Ice Breakers" which shared the common use of "ice"); *see W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (finding the mark "Right Guard Sport Stick" was not confusingly similar to the mark "Sportstick" despite being "composed of the same words and sound" because "when a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened").  In addition, although use of an identical word in two marks suggests a possibility of customer confusion, the Armortec Mark is displayed and advertised with the inclusion of additional words, "Cambridge Pavers," and when coupled with the stylistic differences discussed above, customers are left with a different overall impression of the marks.  *See Two Hands IP LLC*, 563 F. Supp. 3d at 305 (finding possible confusion from shared use of the words "Two Hands" diminished by the marks distinct overall impression conveyed via different design, overall shape, additional words and word placement); *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 160–61 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013) (finding that the similarity was low, despite both marks using the term "bling" and depicting diamonds, because defendants' mark included other terms and depictions, resulting in a different general impression to the public); *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 267 (S.D.N.Y. 2005) (finding that the degree of similarity between marks was low where both products used the phrase "opening day" but logos and other depictions "convey[ed] a different impression" to the public).

Further, Plaintiff does not allege that Plaintiff and Defendant Armorproof sell their products via the same vendors, whether in-person or online, such that a customer would encounter the marks in the same place of sale and be confused.  Therefore, the "overall

impression[s]" of the marks' commercial presentations are distinct. *Jackpocket Inc.*, 2024 WL 1152520, at *4. Defendant Armorproof's Mark is presented in a different typeface and styles, Plaintiff's Marks are sold with the context of "Cambridge Pavers," a well-known house name, and the parties' products are not sold by the same vendors. The cumulative effect of these differences lessens the risk of confusion from the marks' common use of "armor." *See Nabisco, Inc.*, 220 F.3d at 46–47 (concluding that marks "Dentyne Ice" and "Ice Breakers" were dissimilar despite the common use of "ice" because the "cumulative effect of the differences between the parties' products and in the commercial presentation of their marks create[d] distinct marketplace impressions"). Accordingly, Plaintiff has not sufficiently demonstrated that prospective purchasers will confuse Plaintiff's products with Defendant Armorproof's in the marketplace – the shared use of "armor" notwithstanding. This factor weighs against Plaintiff.

### iii. Proximity of the products and their competitiveness

Plaintiff argues that it and Defendant Armorproof target "the same customers in the same geographic area including Long Island," selling "identical product." (Pl.'s Obj. 6, 13.)

In considering the proximity of the products, a court should consider "whether and to what extent the two products compete with each other," the "nature of the products themselves, and the structure of the relevant market." *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 140 (2d Cir. 2023) (quoting *Morningside Grp. Ltd.*, 182 F.3d at 140); *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (same); *W.W.W. Pharm. Co., Inc.*, 984 F.2d at 573 (2d Cir. 1993) (same); *LEGO A/S v. ZURU Inc.*, No. 18-CV-2045, 2025 WL 1518284, at *9 (D. Conn. May 28, 2025) (summary order) (quoting *Cadbury Beverages, Inc.*, 73 F.3d at 480), *appeal dismissed*, No. 24-634, 2025 WL 3537350 (2d Cir. Dec. 10, 2025). "The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys.*, 826 F.3d at 39. "[T]he

closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003); *Ghost L.L.C. v. Ghost Fitness NYC, LLC*, No. 21-CV-3557, 2025 WL 2487826, at *8 (E.D.N.Y. Aug. 29, 2025) (quoting *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 317 (S.D.N.Y. 2010)) (same), *report and recommendation adopted*, No. 21-CV-3557, 2025 WL 2772887 (E.D.N.Y. Sep. 26, 2025).  The focus of the product proximity inquiry is "the likelihood that customers may be confused as to the [s]ource of the products, rather than as to the products themselves." *McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1134 (2d Cir. 1979), *superseded on other grounds by Fed. R. Civ. P. 52(a), as recognized in Cross Com. Media, Inc.*, 841 F.3d at 160.  In determining competitive proximity, a court considers a variety of market factors including "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold."  *Vans, Inc.*, 88 F.4th at 140 (quoting *Cadbury Beverages*, 73 F.3d at 480)); *see Chrome Hearts LLC v. Controse Inc.*, No. 21-CV-6858, 2023 WL 5049198, at *19 (S.D.N.Y. Aug. 8, 2023) (considering "all aspects of the products, including price, style, intended uses, target clientele, typical distribution channels, and others" (citations omitted)); *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 296 (S.D.N.Y. 2003) (same).

The Court finds the parties have competitive proximity because they are direct competitors selling nearly identical products, paving stones, with the same function, and both parties distribute their products in the same geographic region, the New York-New Jersey metropolitan area.  However, Plaintiff's and Defendant Armorproof's products are sold through different distribution channels, their respective websites or other dealers, and this slightly

diminishes the marks' likelihood of confusion by a customer because the products are not sold by the same vendors. *See Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 588 (S.D.N.Y. 2015) ("Products and services offered for sale and advertised through different distribution channels are less likely to be confused." (first citing *Charles of the Ritz Grp. Ltd. v. Quality King Distrib., Inc.*, 832 F.2d 1317, 1322 (2d Cir. 1987); and then citing *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 335–36 (S.D.N.Y. 2013))); *Denimafia Inc. v. New Balance Athletic Shoe, Inc.*, No. 12-CV-4112, 2014 WL 814532, at *16 (S.D.N.Y. Mar. 3, 2014) (finding the lack of overlapping channels of distribution supported that the "products are not competitively proximate and, therefore, consumer confusion is unlikely"). Despite the different distribution channels, the products are nevertheless serving identical purposes in geographic proximity such that both parties are "marketing to and targeting the same customers." (Pl.'s Obj. 6.) An overlapping client base creates potential for confusion. *See Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540, 2025 WL 212064, at *3 (2d Cir. Jan. 16, 2025) (summary order) (finding competitive proximity even though the products were not sold side-by-side in the same brick-and-mortar stores because the products appealed to the same consumers and both products were sold online through the same third-party website); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003) (finding competitive proximity, despite the fact that the products were sold in separate stores, because the products appealed to the same consumers and were sold in geographical proximity); *Jackpocket, Inc. v. Lottomatrix N.Y. LLC*, 645 F. Supp. 3d 185, 258–59 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) (finding competitive proximity where the parties offered the same services and shared similar geographic distribution, market position and audience appeal by commonly selling the services on a mobile app and online). In addition, given Plaintiff's longtime marketing using the Marks,

a "consumer [may] mistakenly assume a common source" upon seeing Defendant Armorproof's Mark because the parties offer the same products. *Virgin Enters. Ltd.*, 335 F.3d at 150.

Accordingly, this factor weighs in favor of Plaintiff.

### iv.    Likelihood that Plaintiff will "bridge the gap"

Plaintiff argues this factor is not pertinent because there is no gap to fill since Defendant Armorproof is using the Armorproof Mark in the same geographical area.  (Pl.'s Obj. 13–14.)

"This factor looks to either the likelihood that [a plaintiff] will enter [a defendant's] business or to the average customer's perception of the likelihood that the plaintiff would enter the defendant's market." *Sports Auth.*, 89 F.3d at 963.  However, because the parties' products are already in competitive proximity, there is no gap to fill, and this factor is irrelevant.  *See Starbucks Corp.*, 588 F.3d at 115 (finding the bridging the gap factor irrelevant because the two products were already in direct competition with each other (citing *Star Indus., Inc.*, 412 F.3d at 387)); *Googly Eye Cru, LLC v. Fast Retailing USA, Inc.*, No. 24-CV-3709, 2025 WL 692125, at *5 (S.D.N.Y. Mar. 4, 2025) (quoting *Star Indus., Inc.*, 412 F.3d at 387).

### v.    Evidence of actual consumer confusion

Plaintiff argues that proof of actual confusion is not required in this case, and Defendant Armorproof's default prevented them from gathering evidence of actual confusion.  (Pl.'s Obj. 12–13.)

"For purposes of the Lanham Act, actual confusion means 'consumer confusion that enables a seller to pass off his goods as the goods of another.'" *Sports Auth.*, 89 F.3d at 963 (quoting *W.W.W. Pharm. Co.*, 984 F.2d at 574).  "It is 'black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.'" *Guthrie Healthcare Sys.*, 826 F.3d at 45 (quoting *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 875).  "If the two marks

have been in use over a substantial period of time without ever producing instances of confusion, this fact can support a junior user's contention that confusion is not likely." *Id.* at 44 (citing *McGregor-Doniger Inc.*, 599 F.2d at 1136). "However, the absence of evidence of actual confusion does not necessarily prove anything, especially when there has been neither long nor significant experience of the two trademarks operating side-by-side in the same market." *Id.*

Plaintiff provides no evidence of actual confusion with Defendant Armorproof's Mark, but lack of actual confusion "does not necessarily prove anything." *Guthrie Healthcare Sys.*, 826 F.3d at 44–45 (Although the plaintiff's case "would of course be even stronger if it had evidence of actual consumer confusion," the absence of such evidence "does not necessarily prove anything."). This factor is therefore neutral. *Googly Eye Cru, LLC*, 2025 WL 692125, at *5 (finding this factor neutral because there was no evidence of actual confusion); *Hope Organics LLC v. Preggo Leggings LLC*, No. 21-CV-2416, 2021 WL 5919367, at *8–9 (S.D.N.Y. Dec. 15, 2021) (same).

### vi.   Evidence of bad faith

Plaintiff argues that Defendant Armorproof's actions caused it to suffer "irreparable harm to [its] valuable goodwill and reputation" through use of the Armorproof Mark. (Pl.'s Obj. 15.) In support, Plaintiff states Defendant Armorproof purchases Plaintiff's paving stones from authorized distributors and resells them with the Armorproof Mark, "thus falsely suggesting to consumers that those products are emanating from or authorized by [P]laintiff, when in fact they are not." (*Id.* at 16.) Plaintiff also alleges that it caused Defendant Armorproof to be served a cease-and-desist letter by email and mail in June of 2024, (Am. Decl. ¶ 21), and Plaintiff's representative confronted a representative of Defendant Armorproof in September of 2024, (*id.* ¶ 18), but Defendant Armorproof refuses to cease use of the Armorproof Mark. (*Id.* ¶¶ 18–21.)

"In analyzing whether a defendant has acted in bad faith, the question is whether the defendant attempted 'to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products.'" *Tiffany & Co.*, 971 F.3d at 88 (quoting *Star Indus., Inc.*, 412 F.3d at 388). "Even where there is no direct evidence of intent, 'if there is additional evidence that supports the inference that the defendant sought to confuse consumers as to the source of the product, . . . the inference of bad faith may fairly be drawn.'" *Kelly-Brown v. Winfrey*, 717 F.3d 295, 312 (2d Cir. 2013) (alteration in original) (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 66 (2d Cir. 2000)).

Plaintiff plausibly alleges bad faith by pleading facts that indicate Defendant Armorproof was aware of the existence of Plaintiff's Marks and nevertheless proceeded to use an allegedly infringing mark and resell Plaintiff's goods with the Armorproof Mark without authorization. As Plaintiff contends, the Amended Declaration alleges Defendant Armorproof knew that it was infringing Plaintiff's Marks because Platiniff confronted Defendant Armorproof, but Defendant Armorproof refused to stop its activity. (Am. Decl. ¶¶ 18–21.) These allegations are sufficient to plausibly allege that Defendant Armorproof acted in bad faith. *See Ghost L.L.C.*, 2025 WL 2487826, at *9–10 (finding plaintiff sufficiently pled bad faith under Lanham Act trademark infringement in default judgment motion by alleging defendants continued to engage in infringing conduct after receiving a demand to stop engaging in such conduct); *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-CV-2790, 2022 WL 771397, at *5 (E.D.N.Y. Feb. 10, 2022) (same), *report and recommendation adopted*, 2022 WL 768302 (E.D.N.Y. Mar. 14, 2022); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *11 (E.D.N.Y. Mar. 23, 2015) (finding bad faith when "[p]laintiff's

representatives spoke to [d]efendant's owner twice prior to this litigation, warning him that [d]efendant was infringing on [p]laintiffs' mark and suggesting that [d]efendant change the name of its salon to avoid further infringement"); *see also Star Indus., Inc.*, 412 F.3d at 389 ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark."); *Mintable Pte. Ltd. v. Mintology Inc.*, No. 23-CV-8215, 2024 WL 3454825, at *8 (S.D.N.Y. July 18, 2024) ("In situations where 'the defendant is aware of the existence of plaintiff's mark and proceeds to use it . . . a finding of 'bad faith' has been inferred.'" (alteration in original) (quoting *Caliko, SA v. Finn & Emma*, LLC, 2022 WL 596072, at *13 (S.D.N.Y. Feb. 28, 2022))).  Accordingly, this factor weighs in favor of Plaintiff.

### vii.  Respective quality of the parties' products

Plaintiff alleges that Defendant Armorproof's infringing mark and unauthorized resale of Plaintiff's goods with the Armorproof Mark have diluted the distinctive quality of Plaintiff's trademarks because Plaintiff typically "oversees the quality and distribution of its genuine products by its authorized dealers."  (Am. Decl. ¶ 17.)  Plaintiff argues they have "no control over the quality of such goods," which threatens its reputation.  (Pl.'s Obj. 16.)

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  *Arrow Fastener Co.*, 59 F.3d at 398 (citing *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 875).  "Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product."  *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1079 (2d Cir. 1993).  When there are no alleged facts suggesting inferior quality, this factor should be treated as neutral.  *Wonderful Co. LLC*, 2025 WL 212064, at *3 (citing *Sly Mag., LLC v. Weider Publ'ns L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009)); *see Sly Mag., LLC,*

346 F. App'x at 723 ("The court properly found that there was no allegation or evidence that the [d]efendants' magazine is of inferior quality. Because there was no difference in quality of product . . . this factor should be considered neutral.").

Plaintiff alleges that the parties sell identical products except for their different marks but does not allege that Defendant Armorproof's products are of inferior quality. Because there are no facts suggesting inferior quality, this factor is neutral. *Wonderful Co. LLC*, 2025 WL 212064, at *3.

### viii.    Sophistication of the relevant consumer population

Plaintiff fails to address this factor.

In considering this factor, a court must evaluate "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone." *McGregor-Doniger Inc.*, 599 F.2d at 1137 (quoting 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies § 81.2, at 577 (3d ed. 1969)). "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in . . . trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol-Myers Squibb*, 973 F.2d at 1046. "Although sophistication may usually be proven by direct evidence, including expert opinions or surveys, 'in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price.'" *Tiffany & Co.*, 971 F.3d at 90 (quoting *Star Indus.*, 412 F.3d at 390).

Plaintiff does not allege facts regarding consumer sophistication, and the record does not reflect product pricing. Accordingly, the Court finds this factor to be neutral. *Googly Eye Cru, LLC*, 2025 WL 692125, at *5 (finding this factor neutral because plaintiff did not allege facts regarding sophistication of consumers); *BYC, Inc. v. Broken Yolk*, No. 21-CV-6203, 2021 WL

5074720, at *5 (W.D.N.Y. Nov. 2, 2021) (same); *see also Starbucks Corp.*, 588 F.3d at 119

("Given the lack of evidence provided to the District Court regarding consumer sophistication,

we decline to give this factor 'much, if any, weight . . . .'" (quoting *Hasbro, Inc.*, 858 F.2d at 78–

79)); *Hasbro, Inc.*, 858 F.2d at 78–79 (finding "the lack of evidence precludes any useful

conclusion on this [factor]").

Evaluating the *Polaroid* factors, the Court concludes that Plaintiff has established a

likelihood of confusion.  The strength of Plaintiff's Marks, the geographic proximity of the

products' markets and their competitiveness, and bad faith favor Plaintiff; the lack of similarity

of the marks weighs against Plaintiff; actual confusion, product quality, and consumer

sophistication are neutral; and bridging the gap is irrelevant.  "While '[n]o single [*Polaroid*]

factor is dispositive,' 'the strength of the mark and similarity of the marks are among the most

important ones.'"  *RiseandShine* II, 2024 WL 5165388, at *4 (alterations in original) (first

quoting *Souza*, 68 F.4th at 110; and then citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818

F.2d 254, 258 (2d Cir. 1987) (identifying the first three *Polaroid* factors as "perhaps the most

significant")).  Because no single factor is dispositive, "the court should focus on the ultimate

question of whether consumers are likely to be confused."  *Playtex Prods., Inc. v. Ga.-Pac.*

*Corp.*, 390 F.3d 158, 162 (2d Cir. 2004) (internal quotation marks omitted), *superseded on other*

*grounds as recognized in Starbucks Corp.*, 588 F.3d at 107–08; *Shakuff LLC v. Shakuff Custom*

*Glass Lighting Inc.*, No. 23-CV-123, 2025 WL 977725, at *5 (E.D.N.Y. Mar. 7, 2025) (quoting

*Playtex Prods., Inc.*, 390 F.3d at 162), *report and recommendation adopted*, 2025 WL 974642

(E.D.N.Y. Apr. 1, 2025).  Despite the lack of similarity of the marks, Plaintiff has established

that its marks are suggestive, strong and entitled to protection and the parties' products are

competitively proximate and nearly identical, making it likely to cause confusion to consumers

because the parties share an overlapping client base that may "mistakenly assume a common source." *Virgin Enters. Ltd.*, 335 F.3d at 150.  Therefore, Plaintiff has established a likelihood of success on the merits of its claims for trademark infringement and false designation of origin under the Lanham Act.  *Playtex Prods., Inc.*, 390 F.3d at 162 (finding no one factor dispositive and directing courts to focus on the ultimate question of whether consumers are likely to be confused).

### e.   Permanent injunctive relief

Plaintiff argues it is entitled to a permanent injunction because Defendant Armorproof failed to participate in this action and "has no intention of ceasing its wrongful conduct."  (Pl.'s Obj. 14–16.)  As a result, injunctive relief is "necessary to redress the irreparable injury that Plaintiff has and will continue to suffer due to [Defendant Armorproof's] infringing actions." (*Id.* at 15.)  Plaintiff also argues a permanent injunction serves the public interest because "the public has an interest in not being deceived," (*id*. at 16 (quoting *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010))), and "[Defendant Armorproof's] sales of infringing or unauthorized products inherently confuse consumers who believe the products are genuine goods originating from Plaintiff,"  (*id*.).

"A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Get Weird, LLC v. A6GSQ Store*, No. 24-CV-7533, 2025 WL 2472887, at *7 (S.D.N.Y. Aug. 28, 2025) (quoting *Kingvision Pay-Per-View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)), *report and recommendation adopted*, 2025 WL 2841185 (S.D.N.Y. Oct. 6, 2025).  The Lanham Act expressly provides that federal courts have the power to "grant injunctions, according to the principles of equity[.]"  15 U.S.C. § 1116(a).  "The requirements for a permanent injunction are

essentially the same as for a preliminary injunction, except that the moving party must demonstrate actual success on the merits." *Martins v. Pidot*, 663 F. App'x 14, 17 (2d Cir. 2016) (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)); *N.Y. Civil Liberties Union*, 684 F.3d at 294 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)) (same); *see also JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2020 WL 6825585, at *5 (S.D.N.Y. Nov. 20, 2020) ("The standard for a permanent injunction is similar [to that of a preliminary injunction].").  "[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (first alteration in original) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Daniels v. Moores*, No. 24-30, 2025 WL 883035, at *1 (2d Cir. Mar. 21, 2025) (summary order) (quoting same).

As to the first factor, Plaintiff has succeeded on the merits of its trademark infringement and false designation of origin claims.  A plaintiff seeking a permanent injunction under the Lanham Act is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection[.]"  15 U.S.C. § 1116(a).  Defendant Armorproof cannot rebut that presumption due to its default.  *See Deckers Outdoor Corp. v. It's Friday, Inc.*, No. 20-CV-10602, 2024 WL 5481211, at *11 (S.D.N.Y. Oct. 31, 2024) (finding likelihood of success on the merits of a trademark infringement action due to defendant's default), *report and recommendation adopted*, 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025); *Allstar Mktg. Grp. LLC*

*v. andnov73*, No. 20-CV-9069, 2023 WL 5208008, at *5 (S.D.N.Y. Aug. 14, 2023) ("The

[d]efaulting [d]efendants, by virtue of their default, have not rebutted the presumption.").

Plaintiff has also satisfied the second factor showing irreparably injury and inadequate

remedies at law to compensate for the injury, by the nature of Defendant Armorproof's default.

First, Defendant Armorproof's default left Plaintiff unable to complete discovery and obtain

additional information to quantify damages. *Deckers Outdoor Corp.*, 2024 WL 5481211, at *11

("[D]efendant's default contributed to plaintiff's inability to establish compensable damages.");

*see also Really Good Stuff, LLC*, 813 F. App'x at 45 (affirming district court finding that the

"loss of goodwill is not calculable and cannot be remedied by royalty payments or other

monetary damages" (citation omitted)); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.

Supp. 2d 515, 541 (S.D.N.Y. 2011) ("[T]he losses of reputation and goodwill and resulting loss

of customers are not precisely quantifiable, remedies at law cannot adequately compensate

[p]laintiff for its injuries." (citing *Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*,

937 F.2d 77, 80 (2d Cir. 1991))).

Second, Defendant Armorproof's default also demonstrates its willingness to continue its

infringement. *Otter Prods., LLC v. 4PX Express USA Inc.*, No. 23-CV-11111, 2025 WL

2144780, at *4 (S.D.N.Y. July 29, 2025) ("A defaulting defendant may be presumed to be

willing to continue their infringement of a mark." (quoting *3M Co. v. Performance Supply, LLC*,

No. 20-CV-2949, 2023 WL 3481608, at *6 (S.D.N.Y. Apr. 26, 2023)), *report and*

*recommendation adopted*, 2023 WL 3480927 (S.D.N.Y. May 16, 2023)).

Third, the balance of hardships favors Plaintiff.  Plaintiff has spent decades establishing

its trademarks, and Defendant Armorproof "cannot complain about the loss of ability to offer its

infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012); *Elegant Furniture*

*& Lighting, Inc. v. GOLIGHTS, Inc.*, No. 22-CV-7172, 2024 WL 343974, at *4 (E.D.N.Y. Jan. 30, 2024) (quoting *id.*); *3M Co.*, 2023 WL 3481608, at *6 (quoting *id.*).

Plaintiff also satisfies the fourth factor because the public interest would not be disserved through this injunction since the injunction ensures the public is not deceived or confused by infringing trademarks. *See GS Holistic, LLC v. New Paradise Inc.*, No. 25-CV-2609, 2025 WL 3657152, at *10 (E.D.N.Y. Nov. 13, 2025) ("[T]he public has an interest in not being deceived." (quoting *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344)), *report and recommendation adopted*, 2025 WL 3654530 (E.D.N.Y. Dec. 16, 2025); *Deckers Outdoor Corp.*, 2024 WL 5481211, at *11 (quoting same); *Allstar Mktg. Grp.*, 2023 WL 5208008, at *6 (quoting same); *see also Otter Prods., LLC*, 2025 WL 2144780, at *4 ("[T]he public has an interest in receiving the products that they think they are receiving." (citation omitted)).

Accordingly, Plaintiff satisfies all of the requirements for a permanent injunction, and the Court grants Plaintiff's request for a permanent injunction enjoining Defendant Armorproof from infringing on its Marks.

## III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for default judgment for claims of (1) federal trademark infringement pursuant to 15 U.S.C. § 1114; and (2) false designation of origin pursuant to 15 U.S.C. § 1125(a), and grants Plaintiff's request for a permanent injunction.  The Court adopts the unopposed portions of the Report and Recommendation that (1) deny as abandoned Plaintiff's requests for relief that are not included in its motion such as damages, attorneys' fees, costs, and disbursements; (2) deny as abandoned Plaintiff's claim under GBL § 349; (3) deny as abandoned Plaintiff's claim under the Anti-Cybersquatting Consumer Protection Act; and (4) deny Plaintiff's claims for dilution in violation

of 15 U.S.C. § 1125(c), unfair competition under New York common law, and statutory unfair

competition pursuant to GBL § 360-1.  The Clerk of Court is directed to enter judgment and

close the case.

Dated: February 20, 2026
       Brooklyn, New York

                                SO ORDERED:


                                _____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge